UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CANDACE CORLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. |
| | ) | 2:07-CV-00396-MHT |
| CPC LOGISTICS, INC., | ) | |
| | ) | |
| Defendant._ | ) | |

**DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING
PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

COMES NOW Defendant CPC Logistics, Inc. ("CPC") and, files this Motion for Reconsideration of Order Granting Plaintiff's Motion for Leave to Amend Complaint.   In support of this Response, Defendant states as follows:

## I.  BACKGROUND FACTS

Defendant CPC is in the business of providing logistics services to corporations throughout the U.S. that operate private truck fleets. CPC's customers are primarily large retail companies that operate a private truck fleet to haul their own products and raw materials. CPC provides qualified truck drivers, dispatchers, supervisors, fleet managers, etc. as required by each customer. CPC also provides warehouse personnel to customers as needed. CPC employs approximately 4,000 employees, assigned to over 300 customer locations in 43 states, Canada, and Puerto Rico. CPC was founded in 1973 in St. Louis, Missouri and the Corporate Headquarters remains in St. Louis.

Proposed Defendant Rheem Manufacturing Company ("Rheem") is in the business of designing, manufacturing and marketing water heaters and HVAC products.  Rheem is organized in two distinct corporate divisions:   the Water Heater Division and the Air Conditioning

Division.  The allegations in this lawsuit relate to the Water Heater Division, which maintains its Division Headquarters in Montgomery, Alabama at 101 Bell Road, Montgomery, Alabama 36117.  Rheem also operates a manufacturing plant in Montgomery, Alabama located at 2600 Gunter Park Drive East.  No plant personnel are involved in the events giving rise to this Charge with the exception of Alora Brady Perkins, who works in the Plant Human Resources Department and is the person to whom Plaintiff first complained about sexual harassment.

Rheem manufactures and markets a broad range of replacement parts for its water heaters.  The replacement parts operation operates out of a Parts Warehouse located at 2773 Gunter Park Drive West.  At the times material to this case, Division employee Mike Hedrick (Parts Business Manager) ("Hedrick") was in charge of the Parts Warehouse and the replacement parts operation.  Hedrick had twenty-four years tenure with Rheem with no disciplinary history, and no prior complaints of sexual harassment.  Plaintiff Candace "Candy" Corley was a CPC contract employee who worked at the Parts Warehouse since November 1, 2004.  Hedrick was her direct supervisor.

Plaintiff alleges that Hedrick invited her to his home, ostensibly for breakfast, on the morning of May 16, 2006.  Plaintiff states that upon her arrival, Hedrick gave her a sex toy (vibrator) and made certain sexually oriented statements to her.  No touching is alleged, and Plaintiff, who says that she was completely surprised by Hedrick's conduct, acknowledges that although the two had exchanged some off color banter at work, there had been no prior episodes of this nature.  Plaintiff reported the incident two days later to Rheem's Human Resources Department.  Rheem suspended Hedrick, and commenced an investigation on the same day it heard Plaintiff's complaint.  Rheem's investigation was prompt and thorough, and Plaintiff, Hedrick, and certain key witnesses were interviewed twice.

Hedrick's version of the incident is in sharp contrast to Plaintiff's. He stated that Plaintiff initiated the early morning visit to his home, and denied giving her a sex toy or making any sexual statements. Rheem was unable to determine which party, if either, was entirely forthright in their versions of the incident. Rheem determined that, at a minimum, Hedrick engaged in improper conduct by signing Plaintiff's time card to pay her for the time when she was at his home rather than at work and telling her to lie about why she was late to work that morning. Rheem decided that Hedrick's serious lapse of judgment precluded his continued employment as a supervisor, despite his long tenure and excellent employment record. In lieu of termination, Hedrick submitted his resignation.

Rheem's actions in response to Plaintiff's allegations present the quintessential example of how an employer should handle matters of this nature. Plaintiff knew that Rheem had a policy against sexual harassment and knew to report the incident to the Human Resources Department. Promptly after receiving her complaint, Rheem commenced an investigation, suspended the accused individual and insured that Plaintiff could return to work without encountering retaliatory conduct. In lieu of termination, the offender opted to resign and Plaintiff, who suffered no adverse employment action, continued to work for CPC at Rheem's Parts Warehouse in the same position she held at the time of the incident.

Plaintiff filed a Charge with the EEOC on June 7, 2006 with the assistance of her current counsel, who notarized her EEOC Charge. *See* EEOC Charge, attached hereto as Ex. A. Importantly, Plaintiff's Charge names Rheem and CPC as co-respondents. Accordingly, CPC and Rheem filed a joint response to the EEOC Charge on August 1, 2006. *See* CPC/Rheem EEOC Response, attached hereto as Ex. B. The EEOC sent Plaintiff a right-to-sue letter dated February 7, 2007 and sent a copy to her attorney. *See* EEOC Letter, attached hereto as Ex. C.

Plaintiff filed suit against CPC as the sole Defendant on May 4, 2007, a few days before her EEOC right-to-sue letter expired.  On September 4, 2007, 209 days after the date of Plaintiff's right-to-sue letter, Plaintiff filed the present Motion For Leave to Amend Complaint seeking to add Rheem as a new party defendant.

## II. ARGUMENT

### A.    UNDER RULE 14, JUSTICE DOES NOT REQUIRE LEAVE TO AMEND UNDER THE CIRCUMSTANCES AT BAR.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party . . . when justice so requires."  FED. R. CIV. P. 15(a).[1]  In *Foman v. Davis,* 371 U.S. 178 (1962), the Supreme Court declared that trial courts have broad discretion in permitting or refusing to grant leave to amend.  *Id.* at 182.  "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.' "  *Id.*  The facts of this case necessitate a denial of Plaintiff's Motion to Amend.

### 1.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND IS THE RESULT OF UNDUE DELAY.

Plaintiff's motion for leave to amend is the result of inexplicable, undue delay.  Plaintiff, who has been represented by her current counsel at least as far back to the date she filed an

---

[1]

Rule 15 also provides that a "party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been place upon the trial calendar, the party may amend it at any time within 20 days after it is served."  FED. R. CIV. P. 15(a).  Clearly, this provision of Rule 15 is not applicable since Defendant CPC has already filed an Answer and the Court has already entered a scheduling order setting this case for trial on June 23, 2008.

EEOC Charge on June 7, 2006, has known from the beginning the facts necessary to file suit against Rheem. Plaintiff's counsel assisted Plaintiff with her EEOC Charge, as evidenced by the fact that he notarized the Charge. *See* Ex. A. Additionally, on June 8, 2006, Plaintiff's counsel wrote Ms. Alora Perkins, Esq., who works in Rheem's Plant Human Resources Department, stating that he represented Ms. Corley in connection with the matter of the alleged harassment from Mr. Hedrick's. *See* June 8, 2006 Letter, attached hereto as Ex. D. On June 14, 2006, Rheem's counsel, Bruce J. Downey III, responded informing Plaintiff's counsel that Capell & Howard, P.C. would be representing Rheem in the matter and that the evidence in question would be preserved. *See* June 14, 2006 Letter, attached hereto as Ex. E.     From the very inception of this lawsuit, Plaintiff and Plaintiff's counsel were aware of the identities of the individuals involved since the bulk of Plaintiff's allegations are against her former supervisor, who was a Rheem employee. Not only did Plaintiff know that Hedrick was a Rheem employee, she knew to report him to Rheem's Human Resources Department when he offended her as described above. Plaintiff's counsel was obviously aware of Rheem's connection to the allegations, as evidenced by his letter to Ms. Perkins informing Rheem of his representation of Plaintiff and concerning the preservation of evidence. *See* Ex. D. Plaintiff, however, was CPC's employee at all times and was never on Rheem's payroll. Planitiff's understanding of these important relationships is demonstrated by the fact that she named CPC and Rheem as co- respondents to her EEOC Charge. *See* Ex. A. In short, Plaintiff bears the burden of pursuing her cause of action with the appropriate defendants; she filed her EEOC Charge with the assistance of her current counsel and was well aware of the identity of all involved parties.

Additionally, the trial for this case has been set for June 23, 2008, and the late addition of Rheem would unduly delay Defendant's preparations for trial.

**B.     AMENDMENT OF PLAINTIFF'S COMPLAINT IS FUTILE BECAUSE HER CLAIMS AGAINST RHEEM ARE UNTIMELY.**

The law of this Circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of America,* 367 F.3d 1255, 1263 (11th Cir. 2004).  "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail."  *St. Charles Foods, Inc. v. America's Favorite Chicken Co.,* 198 F.3d 815, 822-23 (11th Cir. 1999).  The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied.  *See, e.g., Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999) (denial of leave to amend justified by futility when "complaint as amended is still subject to dismissal"); *Florida Power & Light Co. v. Allis Chalmers Corp.,* 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if cause of action asserted therein could not withstand motion to dismiss); *Amick v. BM & KM, Inc.,* 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003) ( "In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss."); *Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1218 (11th Cir. 2004) (explaining that despite "freely given" language of Rule 15(a), leave to amend may be denied on such grounds as undue delay, undue prejudice, and futility).

Amendment of Plaintiff's Complaint is futile because even as amended, Plaintiff still fails to state a viable Title VII claim against Rheem and cannot survive a motion to dismiss because 209 days have passed since the date of Plaintiff's right-to-sue letter.  Title VII requires that an aggrieved party file suit within 90 days of receipt of the right-to-sue letter from the

EEOC.  42 U.S.C. § 2000e-5(f)(1).  The plaintiff has the initial burden of establishing that he filed a Complaint within ninety days of his receipt of the EEOC's right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1) (1994); *see also Santini v. Cleveland Clinic Fla.,* 232 F.3d 823, 825 (11th Cir. 2000). Once the defendant contests this issue, the plaintiff has the burden of establishing that he met the 90-day filing requirement. *Jackson v. Seaboard Coast Line R.R. Co.,* 678 F.2d 992, 1010 (11th Cir. 1982).

This 90-day limitations period is strictly construed.[2] *Baldwin County Welcome Center v. Brown,* 466 U.S. 147 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").  In *Norris v. Florida Health and Rehab. Serv.,* 730 F.2d 682 (11th Cir. 1984) (per curiam), the Eleventh Circuit held that a lawsuit filed 91 days after plaintiff received his right-to-sue letter was time barred.   S*ee also Green v. Union Foundry Co.*, 281 F.3d 1229 (11th Cir. 2002) (Eleventh Circuit affirmed summary judgment in favor of employer of Title VII plaintiff who filed his Complaint 97 days after the EEOC mailed the right-to-sue letter); *Reed v. Big Lots Stores, Inc.*, 2007 WL 1804508 (June 22, 2007 M.D. Ala.) (J. Thompson) (dismissing as untimely Title VII claims of a plaintiff who filed multiple EEOC complaints because a Title VII plaintiff is not permitted to extend the 90-day period "by repeatedly filing broad, duplicative charges with the EEOC and obtaining multiple right to sue letters.") (citations omitted). *Richardson v. Georgia Pacific Corp*, 2005 WL 1278833 (S.D. Ala. 2005) (denying plaintiff's motion for leave to amend and granting defendant's motion for summary judgment because

---

[2]  The Supreme Court has recognized that the doctrine of equitable tolling may apply to extend the limitations period in some cases.  *See Baldwin County,* 466 U.S. at 152.  However, Plaintiff has not asserted any grounds for doing so in this case.  The plaintiff bears the burden of establishing the applicability of the doctrine of equitable tolling. *Carter v. West Publ'g Co.,* 225 F.3d 1258, 1265 (11th Cir. 2000).

plaintiff filed suit 91 days after receipt of right-to-sue letter); *Mosel v. Hills Dept. Store, Inc.,* *789 F.2d 251 (3rd Cir. 1986)* (affirming dismissal of Title VII action brought 91 days after receipt of right-to-sue letter); *Martinez v. United States Sugar Corp.,* 880 F. Supp. 773 (M.D. Fla. 1995), *aff'd,* 77 F.3d 497 (11th Cir. 1996) (court dismissed Title VII case when uncontroverted evidence showed that EEOC mailed the plaintiff's right-to-sue letter on November 25, 1992, and he filed suit 95 days later, on March 1, 1993); *Williams v. Southeast Cable Inc.*, 782 So.2d 988 (Fla. App. 2001) (denying motion for leave to amend complaint to add Title VII claims to state law claims because more than 90 days had elapsed since receipt of right-to-sue letter).

In *Hennelly v. Greenwood Central School District*, 2004 WL 1570277 (W.D.N.Y. 2004), the plaintiff also tried to add an additional party defendant after the 90-day limitations rule and the court denied plaintiff's motion for leave to amend her complaint. In *Hennelly*, the plaintiff filed a *pro se* complaint for Title VII sexual harassment against her school district employer within 90 days of receiving her right-to-sue letter from the EEOC. Plaintiff eventually retained counsel more than a year later and filed a motion for leave to amend her complaint to add as a defendant the superintendent of the school district who had allegedly made inappropriate sexual comments towards plaintiff. *Id.* at *1. The court found that plaintiff did not act in bad faith in delaying her request for leave to amend because she asserted that she incorrectly believed that the school district superintendent was automatically included as a party in the lawsuit due to the fact that he was employed by the school district during the relevant time period. The court found that plaintiff's delay in seeking the amendment until counsel appeared in the case was understandable because until that time, she did not realize that such amendment was even necessary, and after retaining counsel, she promptly sought leave to amend. *Id.* at *2. However,

even though plaintiff did not unduly delay in seeking to amend her complaint, the court denied the motion to amend because the proposed causes of action against the school superintendent were time-barred under both federal and New York law. Plaintiff attempted to amend her complaint to add a defendant well over 90 days after she received her right-to-sue letter from the EEOC. Thus, the court ruled that granting an amendment to the complaint would be an act of futility. *Id.* at *3.[3]

The facts of the *Hennelly* case are more sympathetic than our facts because the plaintiff in *Hennelly* filed her complaint *pro se* and the basis of her failure to sue a party was based on her misunderstanding of the law, while Corley had counsel from the beginning who not only filed her original Complaint, but participated in the lawsuit at the EEOC phase. Corley's counsel was well aware of the facts necessary to determine whether to sue Rheem. In fact, it was reasonable for Rheem to assume that when the 90-day limitations period had passed, Corley's counsel had made the calculated decision not to sue Rheem based on the arguments and defenses presented by Rheem in it's EEOC Response. *See* Ex. B. It is undisputed that Corley sought to amend her Complaint to add a new defendant on September 4, 2007, 209 days after her right–to-sue letter dated February 7, 2007. Because Plaintiff did not file suit against Rheem or move to amend her Complaint to add Rheem as a defendant within 90 days after she received her right-to-sue letter, this action is due to be dismissed as untimely.

---

[3] The court also rejected plaintiff's argument that her proposed amendment should relate back to the date of her original complaint pursuant to FED. R. CIV. P. 15(c). Application of the relation-back doctrine--that the superintendent knew or reasonably should have known that but for a mistake in identity, plaintiff would have included him as a party in the original complaint – was the only solution to plaintiff's limitations problem. However, an amended complaint that adds defendants does not relate back where the plaintiff has shown neither factual mistake (*i.e.,* that she misapprehended the identities of the individuals she wished to sue), nor legal mistake (*i.e.,* that she misunderstood the legal requirements of her cause of action). *Id.* at *3 (citations omitted). The court noted that plaintiff could not plead a mistake of identity because plaintiff identified in her complaint the superintendent as the individual who sexually harassed her. The complaint was legally sufficient on its face because plaintiff was not required to sue the superintendent, and when she did not do so, it appeared to be a conscious and calculated decision to sue just the school district, a decision upon which the superintendent relied. *Id.* at *4.

**C.**    **The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims.**

The Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims because the crux of the allegations are in support of her Title VII claim, which is due to be dismissed as untimely.

WHEREFORE, PREMISES CONSIDERED, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Defendant respectfully moves this Court to deny Plaintiffs' belated and futile attempt to amend her Complaint.

Respectfully submitted,

s/ Stephen D. Christie
Stephen D. Christie (ASB-3774-I51S; CHR016)
**LAMAR, MILLER, NORRIS, HAGGARD & CHRISTIE, P.C.**
501 Riverchase Parkway East, Suite 100
Birmingham, AL 35244
(205) 326-000
(205) 323-2945 – Facsimile
schristie@lmnflaw.com

s/Robert S. Lamar, Jr.
Robert S. Lamar, Jr. (ASB-9361-A39-R; LAM002)
**LAMAR, MILLER, NORRIS, HAGGARD & CHRISTIE, P.C.**
501 Riverchase Parkway East, Suite 100
Birmingham, AL 35244
(205) 326-0000
(205) 323-2945 – Facsimile
BobL@lmnflaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on this 17th day of September, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following and have served a true and correct copy of the foregoing by depositing same with the United States Postal Service, first class, postage prepaid, addressed as follows:

Mr. Mark M. Gibson
Almon & Gibson, LLC
4 Office Park Circle, Suite 214
Birmingham, AL 35223
(205) 445-0895
mgibson9051@charter.net

s/ Stephen D. Christie
OF COUNSEL

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 420-2006-03183 |

and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Date of Birth |
|---|---|
| Ms. Candace Corley | |

Street Address: 324 Maribethloop, Deatsville, AL 36022    City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| CPC Logistics, Inc. | ? | 334-260-1537 |

Street Address: 2773 Gunter Park Dr. West    City, State and ZIP Code: Montgomery, AL 36109

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| Rheem | ? | 334-260-1537 |

Street Address: 2773 Gunter Park Dr. West    City, State and ZIP Code: Montg AL 36109

RECEIVED
EEOC
JUN -9 2006
BIRMINGHAM DISTRICT OFFICE

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: Feb 05    Latest: May 16, 06
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The most recent episode of the continuing harassment I have been subjected to occured on May 16, 2006. My supervisor, Mike Hendrick told me to come to his house for breakfast on that morning. Upon arrival Mr. Hendrick asked me to show him my breasts. I declined. Subsequently he presented me with a sexual aid (vibrator) and ask me to let him watch me use it. I declined. The verbal harassment has included a constant onslaught of comments such as "Nice boobs", "nice butt" and "I need to get you drunk to take advantage of you". All of these advances were unwelcomed, and unsolicited. All of these advances happened at work.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 6/7/06    Candace Corley<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)<br>June 7, 2006 |

Exhibit A

FRANK H. McFADDEN
JOHN F. ANDREWS
WILLIAM D. COLEMAN
WILLIAM K. MARTIN
GEORGE L. BECK, JR.
BRUCE J. DOWNEY III
HENRY C. BARNETT, JR.
K. PALMER SMITH
ROBERT T. MEADOWS III
HENRY H. HUTCHINSON
SHAPARD D. ASHLEY
D. KYLE JOHNSON
ROBERT F. NORTHCUTT

J. LISTER HUBBARD
JAMES N. WALTER, JR.
JAMES H. McLEMORE
CONSTANCE SMITH BARKER
W. HOLT SPEIR III
CHRISTOPHER W. WELLER
DEBRA DEAMES SPAIN
C. CLAY TORBERT III
R. BROOKE LAWSON III
J. SCOTT PIERCE
ROBERT D. RIVES
RICHARD H. ALLEN
M. COURTNEY WILLIAMS

PAIGE R. JACKSON
LEE M. RUSSELL, JR.
CHAD W. BRYAN
MICHAEL P. DALTON
CATY HOUSTON RICHARDSON
ARDEN REED PATHAK
TERRIE SCOTT BIGGS

OF COUNSEL:
JAMES M. SCOTT
THOMAS S. LAWSON, JR.

# CAPELL & HOWARD P.C.
### ATTORNEYS AT LAW

August 7, 2006

J.W. Furman, Investigator
Birmingham District Office
Ridge Park Place
1130 22nd Street, South
Birmingham, Alabama 35205

RE:    **Charging Party:**      **Candace Corley**
      **Respondent(s):**    **CPC Logistics, Inc. & Rheem Manufacturing Company**
      **Charge No.:**      **420-2006-03183**

Dear Ms. Furman:

This Response is submitted on behalf of Co-Respondents CPC Logistics, Inc. ("CPC") and Rheem Manufacturing Company ("Rheem").

## THE PARTIES

Respondent CPC Logistics, Inc. is in the business of providing logistics services to corporations throughout the US that operate private truck fleets. CPC's customers are primarily large retail companies that operate a private truck fleet to haul their own products and raw materials. CPC provides qualified truck drivers, dispatchers, supervisors, fleet managers, etc. as required by each customer. CPC also provides warehouse personnel to customers as needed. CPC employs approximately 4,000 employees, assigned to over 300 customer locations in 43 states, Canada, and Puerto Rico. CPC was founded in 1973 in St. Louis, Missouri and the Corporate Headquarters remains in St. Louis.

Respondent Rheem Manufacturing Company ("Rheem") is in the business of designing, manufacturing and marketing water heaters and HVAC products. Rheem is organized in two distinct corporate divisions: the Water Heater Division and the Air Conditioning Division. This Charge relates to the Water Heater Division which maintains its Division Headquarters in Montgomery, Alabama at 101 Bell Road, Montgomery, Alabama 36117. Rheem also operates a manufacturing plant in Montgomery, Alabama located at 2600 Gunter Park Drive East. No plant personnel are involved in the events giving rise to this Charge with the exception of Alora Brady Perkins, who works in the Plant Human Resources Department and is the person to whom Charging Party first complained about sexual harassment.

Rheem manufactures and markets a broad range of replacement parts for its water heaters. The replacement parts operation operates out of a Parts Warehouse located at 2773 Gunter Park

1073181

MONTGOMERY · OPELIKA / AUBURN

150 SOUTH PERRY STREET (36104), POST OFFICE BOX 2069, MONTGOMERY, ALABAMA 36102-2069
334 241 8000 tel    334 323 8888 fax    www.capellhoward.com

Exhibit B-1

J.W. Furman, Investigator
August 7, 2006
Page 2

Drive, West 36109. Division employee Mike Hedrick (Parts Business Manager) ("Hedrick") was at the times material to this case in charge of the Parts Warehouse and the replacement parts operation. Hedrick had twenty-four years tenure with Rheem with no disciplinary history, and no prior complaints of sexual harassment.

Candace "Candy" Corley is a CPC contract employee who has worked at the Parts Warehouse since November 1, 2004. Hedrick was her direct supervisor.

## BRIEF DESCRIPTION OF THE CHARGE

This Charge arises from Charging Party's allegations that Hedrick invited Charging Party to his home, ostensibly for breakfast, on the morning of May 16, 2006. Charging Party states that upon her arrival, Hedrick gave her a sex toy (vibrator) and made certain sexually oriented statements to her. No touching is alleged, and Charging Party, who says that she was completely surprised by Hedrick's conduct, acknowledges that although the two had exchanged some off color banter at work, there had been no prior episodes of this nature.

Charging Party reported the incident two days later to Rheem's Human Resources Department. Rheem suspended Hedrick, and commenced an investigation on the same day it heard Charging Party's complaint. Rheem's investigation was prompt and thorough. Charging Party, Hedrick, and certain key witnesses were interviewed twice.

Hedrick's version of the incident is in sharp contrast to Charging Party's. He stated Charging Party initiated the early morning visit to his home, and denied giving her a sex toy or making any sexual statements. Rheem was unable to determine which party, if either, was entirely forthright in their versions of the incident. Rheem determined that, at a minimum, Hedrick engaged in improper conduct by signing Charging Party's time card to pay her for the time when she was at his home rather than at work and telling her to lie about why she was late to work that morning. Rheem decided that Hedrick's serious lapse of judgment precluded his continued employment as a supervisor, despite his long tenure and excellent employment record. In lieu of termination, Hedrick submitted his resignation.

As shown below, this Charge presents the quintessential example of how an employer should handle matters of this nature. Charging Party knew Rheem had a policy against sexual harassment and knew to report the incident to the Human Resources Department. Rheem promptly commenced an investigation, suspended the accused individual and insured that Charging Party could return to work without encountering retaliatory conduct. In lieu of termination, the offender opted to resign and Charging Party, who suffered no adverse employment action, still works for CPC at Rheem's Parts Warehouse in the same position she held at the time of the incident.

J.W. Furman, Investigator
August 7, 2006
Page 3

## DETAILED FACTUAL CIRCUMSTANCES
## GIVING RISE TO THIS CHARGE

**CHARGING PARTY'S VERSION OF THE INCIDENT**

Charging Party alleged that on Monday, May 15, 2006 Hedrick invited her to visit his home for breakfast the next morning before work. She alleged that Hedrick, who was taking Tuesday off as a vacation day, told Charging Party he would go to Hardee's and purchase breakfast for the two of them.

On Tuesday, May 16th at sometime before 7:00 a.m. Charging Party called Hedrick at his home asking directions to his residence after becoming lost. She arrived at approximately 7:00 a.m. (Charging Party's normal working hours were 8:00 a.m. to 4:30 p.m.). Charging Party, who was nineteen years old at the time, said that she suspected nothing was amiss, and was not concerned about going to Hedrick's home alone. She said she went because he was her boss and had not done anything to make her apprehensive. Charging Party was aware that Hedrick was taking the day off from work.

When Charging Party arrived at Hedrick's home, Hedrick was outside doing yard work. Charging Party said Hedrick invited her inside, but there was no breakfast. Instead of offering her breakfast, she said Hedrick asked her to show him her new "$4,200 boobs." Hedrick also gave Charging Party a bag containing a sex toy (vibrator) and asked her to demonstrate it while he watched. Hedrick allegedly mentioned that he might provide Charging Party alcohol to get her to cooperate.[1]

Charging Party became nervous about Hedrick's conduct and left for work, taking the bag with the vibrator with her. Charging Party and Hedrick agree that Hedrick told Charging Party to tell his assistant, Gary Holt, upon arriving at work that she was late because she overslept.

Charging Party arrived at work late and, as instructed, told Holt that she had overslept. Charging Party immediately told a female Rheem employee, Sonya Jackson, what had just transpired, and how surprised she was that Hedrick had behaved in this way.[2] Jackson advised Charging Party to tell Hedrick that his advances were not welcome, and that he should leave her alone. Jackson asked Charging Party if she (Charging Party) should tell her mother about the incident.

---

[1]   Charging Party does not allege touching or that Hedrick asked her to have sexual intercourse with him, and admits that she had shared with Hedrick at work the details of her breast enhancement surgery which she and her cousin each had had in January 2006, including the $4200 cost. Charging Party was nineteen years old when she had the surgery.

[2]   Charging Party repeatedly stated during Rheem's investigation that she was completely surprised by Hedrick's conduct because he had never said or done anything like that before.

J.W. Furman, Investigator
August 7, 2006
Page 4

---

Charging Party did tell her mother about the incident. She called in sick on Wednesday, May 17th. On Thursday, May 18th she did not work or call in, but Charging Party's mother, Judy Corley, ("Corley") called the Plant Human Resources Department and spoke with Alora Brady Perkins, Rheem's Plant Employee Relations Supervisor. Corley told Perkins that she believed her daughter was being sexually harassed by Hedrick, and requested a meeting with Perkins at 7:00 a.m. the next morning (Friday). Perkins agreed to the meeting, and immediately notified Abbe Hockaday, Rheem's Division Human Resources Manager, because the Parts Warehouse is a Division operation and Hedrick was a Division employee.

Corley's telephone call to Perkins on Thursday, May 18th was the first notice to Rheem that Charging Party was having a problem with Hedrick. Charging Party did not report the incident to CPC. CPC's first notice of incident came from Rheem during its investigation.

Perkins and Hockaday met with Charging Party and Judy Corley the next morning at 7:15. Charging Party gave her version of the incident as described above and turned the vibrator over to Hockaday.

Charging Party further reported that in addition to the incident at Hedrick's home, there had been occasions at work when Hedrick made comments about her "nice boobs" and that, while she had felt uncomfortable at times, her response had been to "laugh it off." Charging Party allowed Hockaday to tape record a voicemail message Hedrick had left on her cell phone around midmorning on May 16 (the day of the incident). In this message Hedrick referred to a "present" he had given Charging Party and asked her not to tell anyone where she got it lest he get in "trouble."

Hockaday took over the investigation from Perkins at this juncture because this was a Division matter, not a Plant matter.

**HEDRICK'S VERSION OF THE INCIDENT**

Jim Cika, Rheem's Division Specialty Water Heating Manager (Hedrick's supervisor) immediately contacted Hedrick and informed him that he needed to come to Division headquarters for a meeting of an unspecified nature. On Friday afternoon at 4:00 p.m., Hockaday and Cika met with Hedrick, and confronted him with Charging Party's allegations. Hedrick professed to be completely stunned and baffled by the allegations. Hedrick gave a drastically different version of the events of Tuesday morning.

Hedrick admitted that Charging Party visited his home early Tuesday morning before work, but denied inviting her, denied giving her the sex toy, and denied any improper language.

Hedrick said he took a vacation day on Tuesday to take care of some household chores, and that Charging Party called him unexpectedly that morning to tell him that she was coming over for breakfast and asked for directions. Hedrick stated that he was outside preparing to mow his lawn

J.W. Furman, Investigator
August 7, 2006
Page 5

when Charging Party arrived.  Charging Party wanted to see the inside of his home, because she knew that he was making some improvements.  Hedrick said that Charging Party and her mother Judy Corley lived relatively close to him, and that he knew Judy Corley through work (Judy Corley worked for Federal Express and the Parts Warehouse was on her route).

Hedrick denied inviting Charging Party over for breakfast on Monday.  Instead, Hedrick said that Charging Party had been saying for quite sometime that she wanted to come over for breakfast, but that no specific date had been discussed and he was not expecting her call early Tuesday morning.

Hedrick maintained that he had been like a father figure to Charging Party, who is the age of his daughter, and that she, not he, has been guilty of inappropriate sexual remarks and conduct at work.  Hedrick said that in January of 2006 Charging Party and her cousin each had breast enhancement surgery, and told him all about the procedure including the $4,200 cost.  Charging Party and her cousin came to the Parts Warehouse after the surgery and lifted their shirts in front of him to show off their bandages.[3]

Hedrick also said that approximately six months earlier, Charging Party told him details of her sexual relationship with an ex-boyfriend.  He mentioned that she wore low-cut revealing tops and short-shorts to work (which she described as showing her "butt cheeks" when Hedrick cautioned her about her attire in the workplace).  Hedrick said that Charging Party related many things of a personal nature to him (*i.e.* she stated she doesn't need a man because masturbation is an option), that not even her parents knew about and that if he chose to, he could reveal a great many details about Charging Party's conduct and personal life, which would not be flattering.

In short, Hedrick denied engaging in improper conduct, and contended that he was being "set up" by a young female subordinate whose conduct, language and dress had been provocative.  He insisted that although the two had exchanged borderline banter at work of a sexual nature, Charging Party had never told him that anything he had said or done was offensive.

OTHER INTERVIEWS

After the initial interviews of Charging Party and Hedrick, Hockaday followed up by interviewing two other workers in the Parts Warehouse, Sonya Jackson and lead person Gary Holt.  Although neither was present during Charging Party's early morning visit to Hedrick's house, they might have knowledge about the situation or about other interactions between Charging Party and Hedrick.  Sonya Jackson confirmed that Charging Party told her about the situation after she left Hedrick's house and arrived at work.  Holt confirmed that Charging Party gave "slept late" as the reason for being late when she actually was coming from Hedrick's house. Also, Holt confirmed that Hedrick, not he, approved time sheets for Rheem and CPC employees in the Parts Warehouse.

---

[3] Charging Party admits that she told Hedrick about the breast enhancement surgery and the $4,200 cost.

J.W. Furman, Investigator
August 7, 2006
Page 6

---

Confronted with conflicting "he said/she said" versions of the event, Hockaday and Dan Jones, Rheem's Division Vice President for Human Resources, conducted a second round of interviews with Charging Party, Hedrick, Holt and Jackson.

### RHEEM'S DECISION

Ultimately, Rheem determined that, at a minimum, Hedrick had engaged in unacceptable conduct for someone in a supervisory position by signing Charging Party's time card to pay her for work time when he knew she had been at his home. In addition, Hedrick instructed Charging Party to lie to Holt about the reason for being tardy. Although Hedrick had an explanation for the reference to a present in his voicemail message, it was not convincing.

Even though there was reason to suspect Charging Party may have contributed to or helped precipitate the episode with poor judgment, suggestive clothing, conduct and language, no disciplinary action was taken against her because she followed proper procedure by promptly reporting the incident to Rheem's Human Resources Department and cooperating fully with the investigation.

### CONCLUSION

Rheem and CPC respectfully submit that this Charge should be disposed of with a "no cause" finding. Rheem's sexual harassment policy and procedures for investigating and resolving complaints resulted in prompt, effective, remedial action with no adverse consequences to Charging Party other than possibly listening to a few offensive, suggestive comments.

Additionally, Hedrick's alleged conduct, though unacceptable, does not even come close to rising to the level of severity required by controlling 11th Circuit case law to constitute a hostile working environment. His conduct was not severe, pervasive, or frequent enough to have the required effect of permeating the workplace and adversely affecting the conditions of Charging Party's employment.

Sincerely,

Henry C. Barnett, Jr.

HCB, Jr./mmc
cc:     John H. Dowell, Esq., *Attorney for CPC*

Exhibit B-6

EEOC Form 161 (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Candice Corley
324 Maribeth Loop
Deatsville, Alabama 36022

*From: Birmingham District Office*
*Ridge Park Place*
*1130 22nd Street South, Suite 2000*
*Birmingham, AL 35205*

[ ]  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420 2006 03183 | Rita W. Sterling, Investigator | (205) 212-2060 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[ ]  We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not **be collectible.**

On behalf of the Commission

*Delner Franklin-Thomas*                    2-7-07

Enclosure(s)

Delner Franklin-Thomas, District Director          *(Date Mailed)*

cc:    Mark M. Gibson                    Henry C. Barnett, Jr.
Almon & Gibson                    Capell & Howard, P.C.
Attorneys At Law                    Attorneys At Law

Exhibit C

# ALMON & GIBSON, LLC

Attorneys & Counselors
6 Office Park Circle
Suite 214
Birmingham, Alabama 35223

Phone 205-871-0101
Facsimile 205-871-7555

June 8, 2006

Ms. Alora Brady Perkins, Esq.
Rheem Water Heaters
2600 Gunter Park Drive East
Montgomery, AL 36109-1413

Dear Ms. Perkins:

This firm represents Ms. Candace Corley in the matter of the harassment she suffered at the hands of Mr. Hendricks. It is my understanding that you are in possession of the sexual gratification aide that Mr. Hendricks attempted to have my client use in his presence. We believe this will be a crucial piece of evidence in the coming proceedings. Accordingly, this letter is written to request that you do not dispose of, or alter, the vibrator that was given to my client by Mr. Hendricks. If you should have any questions, please do not hesitate to contact me.

Sincerely,

Mark M. Gibson

EXHIBIT D



FRANK H. McFADDEN
JOHN F. ANDREWS
WILLIAM D. COLEMAN
WILLIAM K. MARTIN
GEORGE L. BECK, JR.
BRUCE J. DOWNEY III
HENRY C. BARNETT, JR.
E. PALMER SMITH
ROBERT Y. MEADOWS III
HENRY I. HUTCHINSON
SEAFARD D. ASHLEY
D. KYLE JOHNSON
ROBERT F. NORTHCUTT

J. LISTER HUBBARD
JAMES N. WALTER, JR.
JAMES H. McLEMORE
CONSTANCE SMITH BARKER
W. HOLT SPEIR III
CHRISTOPHER W. WELLER
DEBRA DEANES SPAIN
C. CLAY TORBERT III
R. BROOKE LAWSON III
J. SCOTT PIERCE
ROBERT P. RIVES
RICHARD H. ALLEN
M. COURTNEY WILLIAMS

PAIGE E. JACKSON
LEE M. RUSSELL, JR.
CHAD W. BRYAN
MICHAEL F. DALTON
CATY HOUSTON RICHARDSON
ARDEN RELD FATHAE
TERRIE SCOTT BIGGS

OF COUNSEL:
JAMES M. SCOTT
THOMAS S. LAWSON, JR.

## CAPELL & HOWARD P.C.
ATTORNEYS AT LAW

June 14, 2006

Mark M. Gibson, Esq.
Almon & Gibson, LLC
6 Office Park Circle
Ste. 214
Birmingham, AL 35223

RE:    *Your client, Candace Corley*

Dear Mr. Gibson:

We represent Rheem Manufacturing, Inc. We have been given your letter of June 8, 2006 to Alora Perkins and asked to respond. It is true that Ms. Corley gave what appears to be a sex toy to a member of the Rheem Human Relations Department on Friday, May 19th. We have received that item from Rheem for safekeeping.

You may contact me if you have further questions about it, though I will be out of the country until June 22nd. If you need to contact us prior to then, please contact Henry Barnett, also of this firm.

Very truly yours,

Bruce J. Downey, III

BJD/pm
Direct Dial (334) 241-8060
Direct Fax (334) 241-8260
Email bjd@chlaw.com

1070336

MONTGOMERY • OPELIKA • AUBURN

150 SOUTH PERRY STREET (36104), POST OFFICE BOX 2069, MONTGOMERY, ALABAMA 36102-2069
334 241 8000 tel    334 323 8888 fax    www.capellhoward.com

EXHIBIT E