# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **CANDACE CORLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No.** |
| | ) | **2:07-cv-00396-MHT** |
| **CPC LOGISTICS, INC., and** | ) | |
| **RHEEM MANUFACTURING** | ) | |
| **COMPANY** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT RHEEM'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Defendant Rheem Manufacturing Company ("Rheem") and, files this Memorandum of Law in Support of Motion for Summary Judgment. Rheem moves the Court to dismiss Plaintiff's Title VII sexual harassment claims because they are untimely since she brought suit against Rheem long after the expiration of her 90-day right-to-sue letter from the EEOC. In support of this Motion, Rheem states as follows:

## I.     STATEMENT OF FACTS

Defendant Rheem Manufacturing Company ("Rheem") is in the business of designing, manufacturing and marketing water heaters and HVAC products. Rheem is organized in two distinct corporate divisions: the Water Heater Division and the Air Conditioning Division. The issues in this lawsuit relate solely to the Water Heater Division, which maintains its Division Headquarters in Montgomery, Alabama at 101 Bell Road, Montgomery, Alabama 36117. The Water Heater Division is responsible for several manufacturing plants located in the United States and Mexico, including a plant

1

located in Montgomery, Alabama, at 2600 Gunter Park Drive East. No plant employees are involved in the events giving rise to this Charge with the exception of Alora Brady Perkins, who works in the Plant Human Resources Department and is the person whom Plaintiff and her mother first contacted to make a complaint about sexual harassment. *See* Dan Jones Aff. at ¶ 2, attached hereto as Ex. A.

Rheem's Water Heater Division markets a broad range of replacement parts for its water heaters. The replacement parts department operates from a Parts Warehouse, located at 2773 Gunter Park Drive West, Montgomery, Alabama 36109. At the times material to this case, Division employee Mike Hedrick (Parts Business Manager) ("Hedrick") was in charge of the Parts Warehouse and the replacement parts operation. Hedrick had twenty-four years tenure with Rheem with no disciplinary history, and no prior complaints of sexual harassment. *See* Ex. A at ¶ 3.

Defendant CPC Logistics, Inc. furnishes warehouse personnel to various customers, including Rheem.[1] Plaintiff was an employee of CPC on CPC's payroll but assigned to work at Rheem's Parts Warehouse for seventeen months prior to her only complaint of sexual harassment and for almost eight months thereafter until she resigned for other employment. Hedrick was Plaintiff's immediate supervisor at Rheem's Parts Warehouse during her initial seventeen months. *See* Ex. A at ¶ 4.

Rheem and CPC are separate, unrelated entities not affiliated by common ownership or otherwise. *See* Ex. A at ¶ 5.

---

[1] Defendant CPC is in the business of providing logistics services to corporations throughout the U.S. that operate private truck fleets. CPC's customers are primarily large retail companies that operate a private truck fleet to haul their own products and raw materials. CPC provides qualified truck drivers, dispatchers, supervisors, fleet managers, etc. as required by each customer. CPC also provides warehouse personnel to customers as needed. Plaintiff was a CPC employee who worked at Rheem's warehouse as a contract employee. CPC employs approximately 4,000 employees, assigned to over 300 customer locations in 43 states, Canada, and Puerto Rico. CPC was founded in 1973 in St. Louis, Missouri and the Corporate Headquarters remains in St. Louis.

Plaintiff alleges in her Amended Complaint (Doc. no. 14) at ¶ 9(c) that Hedrick regularly made unwelcome verbal sexual advances towards her from February, 2005 through May 16, 2006. Plaintiff also alleges that, on Monday May 15, 2006, Hedrick demanded that she go to his home to discuss work matters on the morning of Tuesday May 16, 2006. *Id.* at ¶ 9(d). Plaintiff alleges that upon her arrival at his house, Hedrick asked her to show him her breasts and gave her a sex toy (vibrator) and asked her if he could watch her use the item. *Id.* Plaintiff says she declined and left Hedrick's house and went to work on Tuesday May 16, 2007. *Id.* On Thursday May 18, 2006 Plaintiff's mother telephoned Alora Brady Perkins in Rheem's Plant Human Resources Department requesting an appointment very early the next day on Friday May 19, 2006 to share a concern about her daughter, a warehouse temp. *See* Ex. A at ¶ 6. Perkins and Abbe Hockaday, Rheem Division Human Resources Manager with responsibility for the Parts Warehouse, met with Plaintiff and her mother early on the morning of Friday May 19, 2006. At the meeting Plaintiff described going to supervisor Mike's house on Tuesday morning, being asked to show her breasts and being given the vibrator. Upon hearing this sexual harassment complaint against Hedrick, Rheem promptly commenced an investigation and suspended Hedrick pending investigation, cautioning him not to go to the Parts Warehouse and not to call or approach Plaintiff. Plaintiff suffered no adverse employment action. Rheem's investigation was prompt and thorough. Plaintiff, Hedrick, and certain key witnesses were interviewed twice. *Id.* at ¶ 6.

Hedrick's version of the incident at his home is in sharp contrast to Plaintiff's, but the conflicting factual allegations do not create a genuine issue of material fact for

purposes of the specific issue presented by this motion for summary judgment - whether Plaintiff's suit against Rheem is timely. [2]

A.    PLAINTIFF'S CURRENT COUNSEL REPRESENTED HER BEFORE SHE FILED HER EEOC CHARGE AND FILED THIS LAWSUIT ON HER BEHALF.

Plaintiff filed a Charge with the EEOC on June 7, 2006 with the assistance of her current counsel, who notarized her EEOC Charge. *See* EEOC Charge, attached hereto as Ex. B. Importantly, Plaintiff's Charge named Rheem and CPC as co-respondents. Accordingly, CPC and Rheem filed a joint response to the EEOC Charge on August 1, 2006. *See* CPC/Rheem EEOC Response, attached hereto as Ex. C. The EEOC sent Plaintiff a 90-day right-to-sue letter dated February 7, 2007, with carbon copies to Plaintiff's current counsel and Rheem's counsel. *See* EEOC Letter, attached hereto as Ex. D (also attached as Ex. A to Plaintiff's Complaint). Plaintiff filed suit against CPC as the sole Defendant on May 4, 2007, a few days before her EEOC right-to-sue letter expired. On September 4, 2007, 209 days after the date of Plaintiff's 90-day right-to-sue letter, and approximately 125 – 129 days after the 90-day period had expired, Plaintiff filed a Motion For Leave to Amend Complaint (Doc. no. 14) seeking to add Rheem as a new party defendant. The Court granted Plaintiff's Motion for Leave to Amend Complaint on September 11, 2007 (Doc. no. 15) and added Rheem as a defendant 216 days after the date of Plaintiff's right-to-sue letter. Defendant CPC filed a Motion for Reconsideration of the Order Granting Plaintiff's Motion for Leave to Amend Complaint

---

[2] Hedrick stated that Plaintiff initiated the early morning visit to his home, and denied giving her a sex toy or making any sexual statements. Rheem was unable to determine which party, if either, was entirely forthright in their versions of the incident. *Id.* at ¶ 7. Rheem determined that, at a minimum, Hedrick engaged in improper conduct by signing Plaintiff's time card to pay her for the time when she was at his home rather than at work and telling her to lie about why she was late to work that morning. Rheem decided that Hedrick's serious lapse of judgment precluded his continued employment as a supervisor, despite his long tenure and excellent employment record. In lieu of termination, Hedrick submitted his resignation. *Id.* at ¶ 7. Plaintiff continued to work at the Rheem facility under the employ of Defendant CPC until January 11, 2007, when she voluntarily resigned for other employment. *Id.*

on September 17, 2007. (Doc. no. 16). The Court denied Defendant CPC's Motion for Reconsideration on September 21, 2007. (Doc. no. 17). Importantly, the Court stated in its Order that it was taking "no position on whether a newly added defendant should be dismissed." *Id.*

For the reasons that follow, Rheem is entitled to summary judgment on all of Plaintiff's claims because her suit against Rheem is untimely.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Jameson v. Arrow Co.*, 75 F.3d 1528 (11th Cir. 1996). The party asking for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing

there is a genuine issue for trial.' " *Id.* at 324. Thus, in response to Rheem' submissions, Corley must by her own affidavits, deposition excerpts, answers to interrogatories or other proper evidence, designate the specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Corley must meet her burden by doing more than "simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, "[i]n an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion." *Jameson*, 75 F.3d at 1531; *see also Alphin v. Sears Roebuck & Co.*, 940 F.2d 1497, 1500 (11th Cir. 1991).

Thus, to the extent that Rheem shows that Corley will be unable to offer evidence sufficient to establish an element essential to any of her claims on which she will bear the burden of proof at trial or to the extent that Rheem argues that such a deficiency exists, and Corley fails to offer the Court sufficient evidence in her responsive summary judgment submissions, Rheem is entitled to summary judgment.

## III.     ARGUMENT

Plaintiff knew that Rheem had a policy against sexual harassment and knew how to report the incident to the Human Resources Department. Promptly after receiving her complaint, Rheem commenced an investigation, suspended the accused individual and insured that Plaintiff could return to work without encountering retaliatory conduct. In lieu of termination, the offender opted to resign and Plaintiff, who suffered no adverse

employment action, continued to work for CPC at Rheem's Parts Warehouse in the same position she held at the time of the incident until she voluntarily resigned on January 11, 2007 to accept another job. Even assuming, arguendo, that Plaintiff alleges conduct severe and pervasive enough to state a claim for sexual harassment, her Title VII claim fails because it is untimely.

A.     PLAINTIFF'S CLAIMS AGAINST RHEEM SHOULD BE DISMISSED AS UNTIMELY.

1.     PLAINTIFF'S CLAIMS AGAINST RHEEM ARE UNTIMELY BECAUSE 216 DAYS ELAPSED BETWEEN THE DATE OF PLAINTIFF'S RIGHT-TO-SUE LETTER FROM THE EEOC AND THE TIME SHE ADDED RHEEM AS A DEFENDANT.

Plaintiff's Complaint fails to state a viable Title VII claim against Rheem because 216 days passed between the date of Plaintiff's right-to-sue letter on February 7, 2007 and September 11, 2007, the date the Court granted Plaintiff's Motion to Amend Complaint and added Rheem as a Defendant. Title VII requires that an aggrieved party file suit within 90 days of receipt of the right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). The plaintiff has the initial burden of establishing that she filed a Complaint within 90 days of receipt of the EEOC's right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1) (1994); *see also Santini v. Cleveland Clinic Fla.,* 232 F.3d 823, 825 (11th Cir. 2000). Once the defendant contests this issue, the plaintiff has the burden of establishing that she met the 90-day filing requirement. *Jackson v. Seaboard Coast Line R.R. Co.,* 678 F.2d 992, 1010 (11th Cir. 1982).

This 90-day limitations period is strictly construed.[3] *Baldwin County Welcome*

---

[3]     The Supreme Court has recognized that the doctrine of equitable tolling may apply to extend the limitations period in some cases. *See Baldwin County,* 466 U.S. at 152. However, Plaintiff has not asserted any grounds for doing so in this case. The plaintiff bears the burden of establishing the applicability of the doctrine of equitable tolling. *Carter v. West Publ'g Co.,* 225 F.3d 1258, 1265 (11th Cir. 2000).

*Center v. Brown,* 466 U.S. 147 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."). In *Norris v. Florida Health and Rehab. Serv.,* 730 F.2d 682 (11th Cir. 1984) (per curiam), the Eleventh Circuit held that a lawsuit filed 91 days after plaintiff received his right-to-sue letter was time barred.  *See also Green v. Union Foundry Co.*, 281 F.3d 1229 (11th Cir. 2002) (Eleventh Circuit affirmed summary judgment in favor of employer of Title VII plaintiff who filed his Complaint 97 days after the EEOC mailed the right-to-sue letter); *Reed v. Big Lots Stores, Inc.*, 2007 WL 1804508 (June 22, 2007 M.D. Ala.) (J. Thompson) (dismissing as untimely Title VII claims of a plaintiff who filed multiple EEOC complaints because a Title VII plaintiff is not permitted to extend the 90-day period "by repeatedly filing broad, duplicative charges with the EEOC and obtaining multiple right to sue letters.") (citations omitted). *Richardson v. Georgia Pacific Corp*, 2005 WL 1278833 (S.D. Ala. 2005) (denying plaintiff's motion for leave to amend and granting defendant's motion for summary judgment because plaintiff filed suit 91 days after receipt of right-to-sue letter); *Mosel v. Hills Dept. Store, Inc.,* 789 F.2d 251 (3rd Cir. 1986) (affirming dismissal of Title VII action brought 91 days after receipt of right-to-sue letter); *Martinez v. United States Sugar Corp.,* 880 F. Supp. 773 (M.D. Fla. 1995), *aff'd,* 77 F.3d 497 (11th Cir. 1996) (court dismissed Title VII case when uncontroverted evidence showed that EEOC mailed the plaintiff's right-to-sue letter on November 25, 1992, and he filed suit 95 days later, on March 1, 1993); *Williams v. Southeast Cable Inc.*, 782 So.2d 988 (Fla. App. 2001) (denying motion for leave to amend complaint to add Title VII claims to state law claims because more than 90 days had elapsed since receipt of right-to-sue letter).  In short, the

courts in this Circuit have strictly construed the 90-day limitations period and dismissed claims brought more than 90 days after the receipt of an EEOC right-to-sue letter.

It is undisputed that Plaintiff sought to amend her Complaint to add a new defendant on September 4, 2007, 209 days after her right–to-sue letter dated February 7, 2007 was issued. It is also undisputed that the Court granted the motion to amend and added Rheem as a Defendant on September 11, 2007, 216 days after the date of Plaintiff's right-to-sue letter. There is no factual dispute about the date of Corley's EEOC right-to-sue letter or the date on which she added Rheem to the case. From the very beginning, Plaintiff and her attorney were on actual notice of the facts necessary to determine whether to sue Rheem. In fact, Rheem assumed that when the 90-day limitations period had passed, Plaintiff and her counsel had made a calculated decision not to sue Rheem based on the compelling arguments and defenses presented by Rheem in its EEOC Response. *See* Ex. C. Because Plaintiff did not file suit against Rheem or move to amend her Complaint to add Rheem as a defendant within 90 days after she received her right-to-sue letter, this action is due to be dismissed as untimely.

> **2.    PLAINTIFF'S AMENDMENT OF HER COMPLAINT TO ADD RHEEM DOES NOT "RELATE BACK" TO THE DATE OF HER ORIGINAL PLEADING PURSUANT TO FED. R. CIV. P. 15(C) BECAUSE PLAINTIFF'S AMENDMENT IS NOT DUE TO A MISTAKE CONCERNING THE IDENTITY OF THE PROPER PARTY, BUT RATHER APPEARS TO BE THE RESULT OF CARELESS NEGLECT OR A CHANGE OF STRATEGY.**

The law is clear that Rule15(c)(3) of the FED. R. CIV. P. is the only mechanism through which a plaintiff can survive a timeliness objection when she has amended her complaint to add a party after the running of the relevant limitations period. *See McCulley v. Allstates Tech. Servs.,* 2005 WL 1475314 at *16 n. 53 (S.D. Ala. Jun 21, 2005) (citing *Powers v. Graff,* 148 F.3d 1223, 1225 (11th Cir. 1998)). "When a plaintiff

amends a complaint to add a defendant, but the plaintiff does so after the running of the relevant statute of limitations, then Rule 15(c)(3) controls whether the amended complaint may 'relate back' to the filing of the original complaint and thereby escape a timeliness objection." *Powers*, 148 F.3d at 1225 (citation omitted).  Rule 15 provides:

> **(c) Relation Back of Amendments.**  An amendment of a pleading relates back to the date of the original pleading when
>> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, ***and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.***

FED. R. CIV. P. 15 (emphasis added); *see also Cliff v. Payco General American Credits, Inc.,* 363 F.3d 1113, 1131 (11th Cir. 2004) ("[W]hen an amendment seeks to change a party against whom a claim is asserted ..., Rule15(c)(3) requires more than a showing that the claim arose out of the same conduct or transaction originally pleaded; when an amendment seeks to change or add a defendant, Rule15(c)(3) introduces considerations of both prejudice and notice.").[4]

---

[4]    Plaintiff also fails to meet her burden under Rule 15(c)(3) that requires service of the summons and complaint within 120 days of filing the complaint.  *See* FED. R. CIV. P. 15(c)(3); *Goubert v. Terrebonne Parish Consolidated Gov't*, 2007 WL 2425345 at *3-4 (E.D. La. Aug. 21, 2006) (no relation back when defendant received notice of suit over a year after filing of complaint).  Plaintiff filed her complaint on May 4, 2007 and Rheem was served with the amended complaint on October 3, 2007 (217 days after she filed suit).

a)   **RULE 15(C)(3) ALLOWS A PLAINTIFF TO CORRECT A MISTAKE REGARDING THE IDENTITY OF A DEFENDANT, NOT TO ALLOW A PLAINTIFF TO ADD A DEFENDANT MERELY BECAUSE SHE HAS DISCOVERED ADDITIONAL INFORMATION OR BECAUSE SHE SIMPLY FAILED TO INCLUDE THE ADDITIONAL DEFENDANT IN HER ORIGINAL COMPLAINT.**

Rule 15(c)(3) allows an amendment of a pleading to relate back to the date of the original pleading when a plaintiff needs to correct a mistake concerning the identity of the proper party, but does not allow a plaintiff to add a defendant merely because she discovered additional information or simply failed to include the defendant in her original complaint. In *Powers v. Graff,* 148 F.3d 1223 (11th Cir. 1998), and *Wayne v. Jarvis,* 197 F.3d 1098 (11th Cir. 1999), the Eleventh Circuit definitively explained the meaning and scope of the "mistake" requirement of Rule15(c)(3). The mistake proviso is "meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." *Wayne,* 197 F.3d at 1103 (citation omitted). Simply put, Rule15(c)(3) is designed to ensure that a potential defendant who has not been named in a lawsuit prior to expiration of the limitations period has repose, "unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were." *Powers,* 148 F.3d at 1227 (citation omitted). In applying this standard, the Eleventh Circuit has made clear that the term "mistake" does not encompass circumstances where a plaintiff failed to name a defendant because he lacked knowledge of its identity, or where a plaintiff makes a deliberate strategic decision not to name a particular defendant. *See Wayne,* 197 F.3d at 1103 (plaintiff's lack of knowledge of the seven deputies' names and substitution of "John Doe" deputies with specifically-named deputies was not an error, misnomer or

misidentification; court upheld summary judgment for defendants based on statute of limitations because lack of knowledge regarding the identities of the deputy sheriffs was not "a mistake concerning the identity of the proper party.").

In the *Powers* case, before the statute of limitations period ran, the plaintiffs knew defendants' identities, but only when one defendant faced possible insolvency did the plaintiffs amend their complaint to add the known defendants. "[E]ven the most liberal interpretation of 'mistake' cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset." *Powers*, 148 F.3d at 1227 (citation omitted). The court noted that "[t]he Advisory Committee Notes (1991) state that Rule 15(c) deals with 'the problem of a misnamed defendant.' ...Nothing in the Rule or in the Notes indicates that the provision applies to a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged." *Id.* The court reasoned that the purpose of the provision did not support relation back in cases where the newly-added defendants were known to the plaintiff before the running of the statute of limitations and where the potential defendants should not necessarily have known that, absent a mistake by the plaintiff, they would have been sued. The court further reasoned that when relation back is too liberally allowed, the important policy reasons for limitations periods are circumvented. *Id.*

In *Methany v. Smith*, 2006 WL 566111 (S.D. Ga. March 6, 2006), plaintiff, a *pro se* prisoner proceeding *in forma pauperis*, filed a timely § 1983 action against various prison officials and then amended his complaint and added new defendants after the limitations period had run. Considering the issue of whether defendant's untimely amended complaint could relate back to the timely original complaint, the Court found

that there was no "mistake" as provided under Rule 15(c) and granted defendants' Rule 12(b)(6) motion and dismissed the suit. *Id*. at *3. Relying on *Powers,* the *Methany* court noted that plaintiff had not alleged that his failure to name the new defendants was due to a mistake of any kind; nor did he claim that he was unaware of their identities before filing his amended complaint. In fact, plaintiff provided no explanation, other than his own neglect, for his failure to name the new defendants and bring claims against them before the statutory period expired. Accordingly, the court dismissed plaintiff's claims against those defendants. *Id. See also Sims v. Montgomery Co. Comm.*, 873 F. Supp. 585, 611-12 (M.D. Ala. 1994) (denying untimely complaint-in-intervention and granting defendants' summary judgment motion pursuant to Rule 15(c)(3) when intervenors did not "misdescribe" the proper defendants nor were they mistaken about the identity of the proper defendants; at all times before and after their claim accrued, they knew the identity of the defendants but simply failed to name them in their individual capacities in their original complaint-in-intervention); *Goubert v. Terrebonne Parish Consolidated Gov't*, 2007 WL 2425345 at *3-4 (E.D. La. Aug. 21, 2006) (Court did not allow Rule 15(c)(3) relation back for plaintiff who added defendant more than 90 days after receiving EEOC right-to-sue letter even though plaintiff did not know that added defendant was involved in her firing because "purpose of Rule15(c) is to allow plaintiffs to correct honest mistakes as to the name of a party, and it does not apply when plaintiff simply lacks knowledge of the proper party."); c*ompare McCulley v. Allstates Tech. Servs.,* 2005 WL 1475314 at *16 n. 53 (S.D. Ala. Jun 21, 2005) (finding that plaintiff's untimely Title VII claims against new defendant related back to original complaint because defendant was included in complaint but omitted from caption and defendant

knew or should have known that plaintiff's failure to list it as a named defendant in the complaint was an error, not a strategic decision); *Williams v. Enterprise City Schools*, 2007 WL 30226 (M.D. Ala. Jan. 4, 2007) (relation back allowed in Title VII case when defendant held itself out as the misnomer and contributed to plaintiff's mistake).

Thus, in the present case, in order for the Court to allow Plaintiff's belatedly Amended Complaint naming Rheem to relate back to the date of her original complaint, her failure to file suit against Rheem before the limitations period ran can be attributable only to a misnomer or mistake concerning Rheem's identity.

> **b)    PLAINTIFF'S FAILURE TO SUE RHEEM WITHIN THE LIMITATIONS PERIOD WAS INDISPUTABLY NOT DUE TO A MISTAKE REGARDING RHEEM'S IDENTITY.**

Like the plaintiffs in the *Powers* and *Methany* cases, Corley amended her complaint to bring new claims against a completely new defendant long after the period of limitations had expired. Rule 15(c) does not extend to allow relation back in such circumstances. As stated by the Eleventh Circuit, "[a] potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose-unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen." *Powers,* 148 at 1227 (citation omitted). The Rule is intended to allow a plaintiff to correct a mistake regarding the identity of a defendant - not to allow a plaintiff to add new claims or defendants merely because he has discovered additional information or because he simply failed to include the additional claims and defendants in his original complaint. *See id.* at 1226-27; *see also Wayne,* 197 F.3d at 1102-1104.

Plaintiff Corley has not alleged that her failure to name Rheem was due to a mistake of any kind. Plaintiff's Motion to for Leave to Amend (Doc. no. 14) is

completely devoid of any explanation for the late addition of Rheem as a Defendant, so one must conclude that it is the result of inexplicable neglect, belated change of strategy, or undue delay. This is clearly not a case of a mistake concerning the identity of the proper party, the only circumstance that would allow for relation back to the date of the original complaint pursuant to Rule 15(c). Plaintiff, who has been represented by her current counsel at least as far back as June 7, 2006, the date she filed an EEOC Charge naming both CPC and Rheem, has known from the beginning the facts necessary to file suit against Rheem. Plaintiff's counsel assisted Plaintiff with her EEOC Charge, as evidenced by the fact that he notarized the Charge. *See* Ex. B. Additionally, on June 8, 2006, Plaintiff's counsel wrote Ms. Alora Perkins, Esq., who works in Rheem's Plant Human Resources Department, stating that he represented Ms. Corley in connection with the matter of the alleged harassment from Mr. Hedrick's and requesting that Rheem preserve certain evidence. *See* June 8, 2006 Letter, attached hereto as Ex. E. On June 14, 2006, Rheem's counsel, Bruce J. Downey III, responded informing Plaintiff's counsel that Capell & Howard, P.C. would be representing Rheem in the matter and that the evidence in question would be preserved. *See* June 14, 2006 Letter, attached hereto as Ex. F. There can be no dispute that Plaintiff knew the identity of Rheem as a potential defendant in this suit.

Thus, from the very inception of the events underlying this lawsuit, Plaintiff and Plaintiff's counsel were aware of the identities of the companies involved since the bulk of Plaintiff's allegations are against her former supervisor, who was a Rheem employee. Not only did Plaintiff know that Hedrick was a Rheem employee, she knew to report him to Rheem's Human Resources Department when he allegedly offended her as described

above. Plaintiff's counsel obviously was aware of Rheem's connection to the allegations, as evidenced by his letter to Ms. Perkins informing Rheem of his representation of Plaintiff and concerning the preservation of evidence. *See* Ex. E. Plaintiff's understanding of these important relationships is demonstrated by the fact that she named CPC and Rheem as co- respondents to her EEOC Charge. *See* Ex. B.

When Corley did not sue Rheem within the 90-day limitations period and when that limitations period had passed beyond 200 days, it was reasonable for Rheem to assume that Plaintiff and her counsel had made a calculated decision not to sue Rheem based on the compelling arguments and defenses presented by Rheem in its EEOC Response. *See* Ex. C; *Powers,* 148 F.3d at 1227-28 (failure to sue defendant was strategic decision when plaintiff failed to amend complaint to include that party as a defendant until learning that another named defendant was going out of business and might be facing insolvency). In fact, that is the conclusion that Rheem reached when the limitations period ran. In other words, Plaintiff's failure to add Rheem as a defendant for more than double the 90-day period does not fall within a recognized exception, and Rheem never knew or should have known that it would have been a named Defendant at the inception of this lawsuit but for a mistake concerning its identity.

In short, Plaintiff bears the burden of pursuing her cause of action in a timely fashion with the appropriate defendants. She filed her EEOC Charge and her lawsuit with the assistance of her current counsel and was well aware of the identity of and relationships between all involved parties. This is not a case of a mistake concerning the identity of the proper party, which would allow for relation back to the date of the original complaint. Because she failed to file suit against Rheem within the 90-day

limitations period, her claims should be dismissed as untimely and the Court should enter summary judgment in Rheem's favor.

**B.    RHEEM REQUESTS AN EXPEDITED RULING ON THIS MOTION FOR SUMMARY JUDGMENT.**

Rheem respectfully requests that the Court expedite its ruling on this Motion for Summary Judgment. Plaintiff and Defendant CPC already met pursuant to Rule 26 and this matter has been set for trial during the term commencing June 23, 2008. Rheem wishes to avoid the costly discovery and trial preparation processes in anticipation that the Court will agree that Plaintiff's suit against Rheem is untimely. Moreover, Rheem's counsel has a previously set trial date conflict during the June 28, 2008 term of court for which this case is set. (*Keith Ruldolph v. MOBIS Alabama, LLC*, In the United State District Court for the Middle District of Alabama, Northern Division, Case No.: 2:06-cv-994-ID). Therefore, Rheem respectfully moves the Court to expedite its ruling.

**C.    RHEEM'S MOTION ONLY ADDRESSES THE TIMELINES OF PLAINTIFF'S CLAIM.**

Rheem wishes to clarify that this Motion addresses only the timeliness of Plaintiff's claim. Rheem has other grounds for summary judgment that it intends to assert if this Motion is denied. For example, Plaintiff's allegations do not rise to the level of an actionable Title VII case and even if they did, Rheem took prompt effective remedial action as soon as Plaintiff complained, and Plaintiff suffered no adverse employment action.

## IV.     CONCLUSION

**WHEREFORE, PREMISES CONSIDERED**, pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant respectfully moves this Court to grant Rheem's Motion for Summary Judgment and dismiss all of Plaintiff's claims as untimely.

Respectfully submitted,
/s/Henry C. Barnett, Jr.
HENRY C. BARNETT, JR. (BAR037)
*ATTORNEY FOR RHEEM*

**OF COUNSEL**:
CAPELL & HOWARD, P. C.
150 South Perry Street
Post Office Box 2069
Montgomery, AL  36102
Telephone:  (334) 241-8059
Facsimile:   (334) 323-8888

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of November 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Stephen D. Christie
Robert S. Lamar, Jr.
Lamar, Miller, Norris, Haggard & Christie
501 Riverchase Parkway East, Suite 100
Birmingham, Alabama  35244

Mark M. Gibson
Almon & Gibson, LLC
4 Office Park Circle, Suite 214
Birmingham, Alabama  35223

Adam P. Morel
2300 10th Court South
Birmingham, Alabama  35205

/s/Henry C. Barnett, Jr.
HENRY C. BARNETT, JR. (BAR037)

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **CANDACE CORLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No.** |
| | ) | **2:07-cv-00396-MHT** |
| **CPC LOGISTICS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**AFFIDAVIT OF DAN JONES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before me, a notary public in and for said county and state, personally appeared Dan Jones, who is known to me, and who after being first duly sworn, deposes and states as follows:

1.    My name is Dan Jones, and I am the Water Heater Division Vice President of Human Resources for Rheem Manufacturing Company ("Rheem"). As the Vice President of Human Resources, I am ultimately responsible for all human resources functions, including maintenance of Rheem's personnel records. My staff and I conducted the investigation concerning Plaintiff's allegations of sexual harassment.

2.    Defendant Rheem Manufacturing Company ("Rheem") is in the business of designing, manufacturing and marketing water heaters and HVAC products. Rheem is organized in two distinct corporate divisions: the Water Heater Division and the Air Conditioning Division. The issues in this lawsuit relate solely to the Water Heater Division, which maintains its Division Headquarters in Montgomery, Alabama at 101 Bell Road, Montgomery, Alabama 36117. The Water Heater Division is responsible for


EXHIBIT
A
tabbies®

several manufacturing plants located in the United States and Mexico, including a plant located in Montgomery, Alabama, at 2600 Gunter Park Drive East. No plant employees are involved in the events giving rise to this Charge with the exception of Alora Brady Perkins, who works in the Plant Human Resources Department and is the person whom Plaintiff and her mother first contacted to make a complaint about sexual harassment.

3.    Rheem's Water Heater Division markets a broad range of replacement parts for its water heaters. The replacement parts department operates from a Parts Warehouse, located at 2773 Gunter Park Drive West, Montgomery, Alabama 36109. At the times material to this case, Division employee Mike Hedrick (Parts Business Manager) ("Hedrick") was in charge of the Parts Warehouse and the replacement parts operation. Hedrick had twenty-four years tenure with Rheem with no disciplinary history, and no prior complaints of sexual harassment.

4.    Defendant CPC Logistics, Inc. furnishes warehouse personnel to various customers, including Rheem. Plaintiff was an employee of CPC on CPC's payroll but assigned to work at Rheem's Parts Warehouse for seventeen months prior to her only complaint of sexual harassment and for almost eight months thereafter until she resigned for other employment. Hedrick was Plaintiff's immediate supervisor at Rheem's Parts Warehouse during her initial seventeen months.

5.    Rheem and CPC are separate, unrelated entities not affiliated by common ownership or otherwise.

6.    On Thursday May 18, 2006 Plaintiff's mother telephoned Alora Brady Perkins in Rheem's Plant Human Resources Department requesting an appointment very early the next day on Friday May 19, 2006 to share a concern about her daughter, a

warehouse temp.    Perkins and Abbe Hockaday, Rheem Division Human Resources Manager on my staff with responsibility for the Parts Warehouse, met with Plaintiff and her mother early on the morning of Friday May 19, 2006. At the meeting Plaintiff described going to supervisor Mike's house on Tuesday morning, being asked to show her breasts and being given the vibrator.  Upon hearing this sexual harassment complaint against Hedrick, Rheem promptly commenced an investigation and suspended Hedrick pending investigation, cautioning him not to go to the Parts Warehouse and not to call or approach Plaintiff.    Plaintiff suffered no adverse employment action.  Rheem's investigation was prompt and thorough.  Plaintiff, Hedrick, and certain key witnesses were interviewed twice.

7.      Hedrick's version of the incident at his home is in sharp contrast to Plaintiff's. Hedrick stated that Plaintiff initiated the early morning visit to his home. He denied giving her a sex toy or making any sexual statements.  Rheem was unable to determine which party, if either, was entirely forthright in their versions of the incident. Rheem determined that, at a minimum, Hedrick engaged in improper conduct by signing Plaintiff's time card to pay her for the time when she was at his home rather than at work and telling her to lie about why she was late to work that morning.  Rheem decided that Hedrick's serious lapse of judgment precluded his continued employment as a supervisor, despite his long tenure and excellent employment record.  In lieu of termination, Hedrick submitted his resignation.

8.      Plaintiff continued to work at the Rheem Parts Warehouse under the employ of Defendant CPC until January 11, 2007, when she voluntarily resigned for other employment.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November _20_ , 2007.

_____
**DAN JONES**

Sworn to and subscribed before me on this the _20th_ day of November, 2007 .

Notary Public

My Commission Expires: April 7, 2010

[SEAL]

4

EEOC FORM 131 (5/01)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| **Abby Hock, Human Resources**<br>**CPC LOGISTICS, INC./RHEEM**<br>**2773 Gunter Park Dr, West**<br>**Montgomery, AL 36109** | **Candace Corley** |
| | THIS PERSON *(check one or both)*<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**420-2006-03183** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **14-JUL-06** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by _____ to _____
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have must be directed to:

| **Debra B. Leo,**<br>**ADR Coordinator**<br><br>*EEOC Representative*<br><br>*Telephone* **(205) 212-2146** | **Birmingham District Office - 420**<br>**Ridge Park Place**<br>**1130 22nd Street, South**<br>**Birmingham, AL 35205** |
|---|---|

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [ ] AGE  [ ] DISABILITY  [ ] RETALIATION  [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **Jun 14, 2006** | **Bernice Williams-Kimbrough,**<br>**District Director** | *Bernice Williams Kimbrough*<br>*(RRM)* |

**EXHIBIT**

B

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 420-2006-03183 |

and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Date of Birth |
|---|---|
| Ms. Candace Corley | |

Street Address: 324 Maribethloop, Deatsville AL 36022

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| CPC Logistics, Inc. | ? | 334-260-1537 |

Street Address: 2773 Gunter Park Dr. West  City, State and ZIP Code: Montgomery, AL 36109

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| Rheem | ? | 334-260-1537 |

Street Address: 2773 Gunter Park Dr. West  City, State and ZIP Code: Montg AL 36109

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: Feb 05   Latest: May 16, 06

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The most recent episode of the continuing harassment I have been subjected to occured on May 16, 2006. My supervisor, Mike Hendrick told me to come to his house for breakfast on that morning. Upon arrival Mr. Hendrick asked me to show him my breasts. I declined. Subsequently he presented me with a sexual aid (vibrator) and ask me to let him watch me use it. I declined. The verbal harassment has included a constant onslaught of comments such as "Nice boobs", "nice butt" and "I need to get you drunk to take advantage of you". All of these advances were unwelcomed, and unsolicited. All of these advances happened at work.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 6/7/06  Charging Party Signature: Candace Corley

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)
June 7, 2006



FREDERICK K. JACKSON
JOHN F. ANDREWS
WILLIAM D. COLEMAN
WILLIAM K. MARTIN
GEORGE L. BECK, JR.
BRUCE J. DOWNEY III
HENRY C. BARNETT, JR.
K. PALMER SMITH
ROBERT T. MEADOWS III
HENRY H. HUTCHINSON
SHAPARD D. ASHLEY
D. KYLE JOHNSON
ROBERT F. NORTHCUTT

JAMES N. WALTER, JR.
JAMES N. McLEMORE
CONSTANCE SMITH BARKER
W. HOLT SPEIR III
CHRISTOPHER W. WELLER
DEBRA DEAMES SPAIN
C. CLAY TORBERT III
R. BROOKE LAWSON III
J. SCOTT PIERCE
ROBERT D. RIVES
RICHARD H. ALLEN
M. COURTNEY WILLIAMS

LEE M. RUSSELL, JR.
CHAD W. BRYAN
MICHAEL P. DALTON
CATY HOUSTON RICHARDSON
ARDEN REED PATHAK
TERRIE SCOTT BIGGS

OF COUNSEL:
JAMES M. SCOTT
THOMAS S. LAWSON, JR.

# CAPELL & HOWARD P.C.
### ATTORNEYS AT LAW

August 7, 2006

J.W. Furman, Investigator
Birmingham District Office
Ridge Park Place
1130 22nd Street, South
Birmingham, Alabama 35205

|  |  |  |
|---|---|---|
| **RE:** | **Charging Party:** | **Candace Corley** |
|  | **Respondent(s):** | **CPC Logistics, Inc. & Rheem Manufacturing Company** |
|  | **Charge No.:** | **420-2006-03183** |

Dear Ms. Furman:

This Response is submitted on behalf of Co-Respondents CPC Logistics, Inc. ("CPC") and Rheem Manufacturing Company ("Rheem").

## THE PARTIES

Respondent CPC Logistics, Inc. is in the business of providing logistics services to corporations throughout the US that operate private truck fleets. CPC's customers are primarily large retail companies that operate a private truck fleet to haul their own products and raw materials. CPC provides qualified truck drivers, dispatchers, supervisors, fleet managers, etc. as required by each customer. CPC also provides warehouse personnel to customers as needed. CPC employs approximately 4,000 employees, assigned to over 300 customer locations in 43 states, Canada, and Puerto Rico. CPC was founded in 1973 in St. Louis, Missouri and the Corporate Headquarters remains in St. Louis.

Respondent Rheem Manufacturing Company ("Rheem") is in the business of designing, manufacturing and marketing water heaters and HVAC products. Rheem is organized in two distinct corporate divisions: the Water Heater Division and the Air Conditioning Division. This Charge relates to the Water Heater Division which maintains its Division Headquarters in Montgomery, Alabama at 101 Bell Road, Montgomery, Alabama 36117. Rheem also operates a manufacturing plant in Montgomery, Alabama located at 2600 Gunter Park Drive East. No plant personnel are involved in the events giving rise to this Charge with the exception of Alora Brady Perkins, who works in the Plant Human Resources Department and is the person to whom Charging Party first complained about sexual harassment.

Rheem manufactures and markets a broad range of replacement parts for its water heaters. The replacement parts operation operates out of a Parts Warehouse located at 2773 Gunter Park

1073181

**MONTGOMERY • OPELIKA / AUBURN**

150 SOUTH PERRY STREET (36104), POST OFFICE BOX 2069, MONTGOMERY, ALABAMA 36102
334 241 8000 *tel*     334 323 8888 *fax*     www.capellhoward.com



EXHIBIT
C

J.W. Furman, Investigator
August 7, 2006
Page 2

---

Drive, West 36109. Division employee Mike Hedrick (Parts Business Manager) ("Hedrick") was at the times material to this case in charge of the Parts Warehouse and the replacement parts operation. Hedrick had twenty-four years tenure with Rheem with no disciplinary history, and no prior complaints of sexual harassment.

Candace "Candy" Corley is a CPC contract employee who has worked at the Parts Warehouse since November 1, 2004. Hedrick was her direct supervisor.

## BRIEF DESCRIPTION OF THE CHARGE

This Charge arises from Charging Party's allegations that Hedrick invited Charging Party to his home, ostensibly for breakfast, on the morning of May 16, 2006. Charging Party states that upon her arrival, Hedrick gave her a sex toy (vibrator) and made certain sexually oriented statements to her. No touching is alleged, and Charging Party, who says that she was completely surprised by Hedrick's conduct, acknowledges that although the two had exchanged some off color banter at work, there had been no prior episodes of this nature.

Charging Party reported the incident two days later to Rheem's Human Resources Department. Rheem suspended Hedrick, and commenced an investigation on the same day it heard Charging Party's complaint. Rheem's investigation was prompt and thorough. Charging Party, Hedrick, and certain key witnesses were interviewed twice.

Hedrick's version of the incident is in sharp contrast to Charging Party's. He stated Charging Party initiated the early morning visit to his home, and denied giving her a sex toy or making any sexual statements. Rheem was unable to determine which party, if either, was entirely forthright in their versions of the incident. Rheem determined that, at a minimum, Hedrick engaged in improper conduct by signing Charging Party's time card to pay her for the time when she was at his home rather than at work and telling her to lie about why she was late to work that morning. Rheem decided that Hedrick's serious lapse of judgment precluded his continued employment as a supervisor, despite his long tenure and excellent employment record. In lieu of termination, Hedrick submitted his resignation.

As shown below, this Charge presents the quintessential example of how an employer should handle matters of this nature. Charging Party knew Rheem had a policy against sexual harassment and knew to report the incident to the Human Resources Department. Rheem promptly commenced an investigation, suspended the accused individual and insured that Charging Party could return to work without encountering retaliatory conduct. In lieu of termination, the offender opted to resign and Charging Party, who suffered no adverse employment action, still works for CPC at Rheem's Parts Warehouse in the same position she held at the time of the incident.

J.W. Furman, Investigator
August 7, 2006
Page 3

---

## DETAILED FACTUAL CIRCUMSTANCES
## GIVING RISE TO THIS CHARGE

**CHARGING PARTY'S VERSION OF THE INCIDENT**

Charging Party alleged that on Monday, May 15, 2006 Hedrick invited her to visit his home for breakfast the next morning before work. She alleged that Hedrick, who was taking Tuesday off as a vacation day, told Charging Party he would go to Hardee's and purchase breakfast for the two of them.

On Tuesday, May 16th at sometime before 7:00 a.m. Charging Party called Hedrick at his home asking directions to his residence after becoming lost. She arrived at approximately 7:00 a.m. (Charging Party's normal working hours were 8:00 a.m. to 4:30 p.m.). Charging Party, who was nineteen years old at the time, said that she suspected nothing was amiss, and was not concerned about going to Hedrick's home alone. She said she went because he was her boss and had not done anything to make her apprehensive. Charging Party was aware that Hedrick was taking the day off from work.

When Charging Party arrived at Hedrick's home, Hedrick was outside doing yard work. Charging Party said Hedrick invited her inside, but there was no breakfast. Instead of offering her breakfast, she said Hedrick asked her to show him her new "$4,200 boobs." Hedrick also gave Charging Party a bag containing a sex toy (vibrator) and asked her to demonstrate it while he watched. Hedrick allegedly mentioned that he might provide Charging Party alcohol to get her to cooperate.[1]

Charging Party became nervous about Hedrick's conduct and left for work, taking the bag with the vibrator with her. Charging Party and Hedrick agree that Hedrick told Charging Party to tell his assistant, Gary Holt, upon arriving at work that she was late because she overslept.

Charging Party arrived at work late and, as instructed, told Holt that she had overslept. Charging Party immediately told a female Rheem employee, Sonya Jackson, what had just transpired, and how surprised she was that Hedrick had behaved in this way.[2] Jackson advised Charging Party to tell Hedrick that his advances were not welcome, and that he should leave her alone. Jackson asked Charging Party if she (Charging Party) should tell her mother about the incident.

---

[1]   Charging Party does not allege touching or that Hedrick asked her to have sexual intercourse with him, and admits that she had shared with Hedrick at work the details of the breast enhancement surgery which she and her cousin each had had in January 2006, including the $4200 cost. Charging Party was nineteen years old when she had the surgery.

[2] Charging Party repeatedly stated during Rheem's investigation that she was completely surprised by Hedrick's conduct because he had never said or done anything like that before.

J.W. Furman, Investigator
August 7, 2006
Page 4

---

Charging Party did tell her mother about the incident. She called in sick on Wednesday, May 17th. On Thursday, May 18th she did not work or call in, but Charging Party's mother, Judy Corley, ("Corley") called the Plant Human Resources Department and spoke with Alora Brady Perkins, Rheem's Plant Employee Relations Supervisor. Corley told Perkins that she believed her daughter was being sexually harassed by Hedrick, and requested a meeting with Perkins at 7:00 a.m. the next morning (Friday). Perkins agreed to the meeting, and immediately notified Abbe Hockaday, Rheem's Division Human Resources Manager, because the Parts Warehouse is a Division operation and Hedrick was a Division employee.

Corley's telephone call to Perkins on Thursday, May 18th was the first notice to Rheem that Charging Party was having a problem with Hedrick. Charging Party did not report the incident to CPC. CPC's first notice of incident came from Rheem during its investigation.

Perkins and Hockaday met with Charging Party and Judy Corley the next morning at 7:15. Charging Party gave her version of the incident as described above and turned the vibrator over to Hockaday.

Charging Party further reported that in addition to the incident at Hedrick's home, there had been occasions at work when Hedrick made comments about her "nice boobs" and that, while she had felt uncomfortable at times, her response had been to "laugh it off." Charging Party allowed Hockaday to tape record a voicemail message Hedrick had left on her cell phone around midmorning on May 16 (the day of the incident). In this message Hedrick referred to a "present" he had given Charging Party and asked her not to tell anyone where she got it lest he get in "trouble."

Hockaday took over the investigation from Perkins at this juncture because this was a Division matter, not a Plant matter.

**HEDRICK'S VERSION OF THE INCIDENT**

Jim Cika, Rheem's Division Specialty Water Heating Manager (Hedrick's supervisor) immediately contacted Hedrick and informed him that he needed to come to Division headquarters for a meeting of an unspecified nature. On Friday afternoon at 4:00 p.m., Hockaday and Cika met with Hedrick, and confronted him with Charging Party's allegations. Hedrick professed to be completely stunned and baffled by the allegations. Hedrick gave a drastically different version of the events of Tuesday morning.

Hedrick admitted that Charging Party visited his home early Tuesday morning before work, but denied inviting her, denied giving her the sex toy, and denied any improper language.

Hedrick said he took a vacation day on Tuesday to take care of some household chores, and that Charging Party called him unexpectedly that morning to tell him that she was coming over for breakfast and asked for directions. Hedrick stated that he was outside preparing to mow his lawn

J.W. Furman, Investigator
August 7, 2006
Page 5

---

when Charging Party arrived.  Charging Party wanted to see the inside of his home, because she knew that he was making some improvements.  Hedrick said that Charging Party and her mother Judy Corley lived relatively close to him, and that he knew Judy Corley through work (Judy Corley worked for Federal Express and the Parts Warehouse was on her route).

Hedrick denied inviting Charging Party over for breakfast on Monday.  Instead, Hedrick said that Charging Party had been saying for quite sometime that she wanted to come over for breakfast, but that no specific date had been discussed and he was not expecting her call early Tuesday morning.

Hedrick maintained that he had been like a father figure to Charging Party, who is the age of his daughter, and that she, not he, has been guilty of inappropriate sexual remarks and conduct at work.  Hedrick said that in January of 2006 Charging Party and her cousin each had breast enhancement surgery, and told him all about the procedure including the $4,200 cost.  Charging Party and her cousin came to the Parts Warehouse after the surgery and lifted their shirts in front of him to show off their bandages.[3]

Hedrick also said that approximately six months earlier, Charging Party told him details of her sexual relationship with an ex-boyfriend.  He mentioned that she wore low-cut revealing tops and short-shorts to work (which she described as showing her "butt cheeks" when Hedrick cautioned her about her attire in the workplace).  Hedrick said that Charging Party related many things of a personal nature to him (*i.e.* she stated she doesn't need a man because masturbation is an option), that not even her parents knew about and that if he chose to, he could reveal a great many details about Charging Party's conduct and personal life, which would not be flattering.

In short, Hedrick denied engaging in improper conduct, and contended that he was being "set up" by a young female subordinate whose conduct, language and dress had been provocative.  He insisted that although the two had exchanged borderline banter at work of a sexual nature, Charging Party had never told him that anything he had said or done was offensive.

OTHER INTERVIEWS

After the initial interviews of Charging Party and Hedrick, Hockaday followed up by interviewing two other workers in the Parts Warehouse, Sonya Jackson and lead person Gary Holt.  Although neither was present during Charging Party's early morning visit to Hedrick's house, they might have knowledge about the situation or about other interactions between Charging Party and Hedrick.  Sonya Jackson confirmed that Charging Party told her about the situation after she left Hedrick's house and arrived at work.  Holt confirmed that Charging Party gave "slept late" as the reason for being late when she actually was coming from Hedrick's house. Also, Holt confirmed that Hedrick, not he, approved time sheets for Rheem and CPC employees in the Parts Warehouse.

---

[3] Charging Party admits that she told Hedrick about the breast enhancement surgery and the $4,200 cost.

J.W. Furman, Investigator
August 7, 2006
Page 6

---

Confronted with conflicting "he said/she said" versions of the event, Hockaday and Dan Jones, Rheem's Division Vice President for Human Resources, conducted a second round of interviews with Charging Party, Hedrick, Holt and Jackson.

## RHEEM'S DECISION

Ultimately, Rheem determined that, at a minimum, Hedrick had engaged in unacceptable conduct for someone in a supervisory position by signing Charging Party's time card to pay her for work time when he knew she had been at his home. In addition, Hedrick instructed Charging Party to lie to Holt about the reason for being tardy. Although Hedrick had an explanation for the reference to a present in his voicemail message, it was not convincing.

Even though there was reason to suspect Charging Party may have contributed to or helped precipitate the episode with poor judgment, suggestive clothing, conduct and language, no disciplinary action was taken against her because she followed proper procedure by promptly reporting the incident to Rheem's Human Resources Department and cooperating fully with the investigation.

## CONCLUSION

Rheem and CPC respectfully submit that this Charge should be disposed of with a "no cause" finding. Rheem's sexual harassment policy and procedures for investigating and resolving complaints resulted in prompt, effective, remedial action with no adverse consequences to Charging Party other than possibly listening to a few offensive, suggestive comments.

Additionally, Hedrick's alleged conduct, though unacceptable, does not even come close to rising to the level of severity required by controlling 11th Circuit case law to constitute a hostile working environment. His conduct was not severe, pervasive, or frequent enough to have the required effect of permeating the workplace and adversely affecting the conditions of Charging Party's employment.

Sincerely,

Henry C. Barnett, Jr.

HCB, Jr./mmc
cc:     John H. Dowell, Esq., *Attorney for CPC*

EOC Form 161 (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To:Candice Corley
324 Maribeth Loop
Deatsville, Alabama 36022

*From: Birmingham District Office*
*Ridge Park Place*
*1130 22nd Street South, Suite 2000*
*Birmingham, AL 35205*

[  ]   *On behalf of person(s) aggrieved whose identity is*
       *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 20 2006 03183 | Rita W. Sterling, Investigator | (205) 212-2060 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[  ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]   Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[  ]   We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[  ]   While reasonable efforts were made to locate you, we were not able to do so.

[  ]   You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ]   Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Delner Franklin-Thomas*                    2-7-07

Enclosure(s)           Delner Franklin-Thomas, District Director           *(Date Mailed)*

cc:   Mark M. Gibson              Henry C. Barnett, Jr.
      Almon & Gibson             Capell & Howard, P.C.
      Attorneys At Law           Attorneys At Law

**EXHIBIT**

**D**

# ALMON & GIBSON, LLC

Attorneys & Counselors
6 Office Park Circle
Suite 214
Birmingham, Alabama 35223

Phone 205-871-0101
Facsimile 205-871-7555

June 8, 2006

Ms. Alora Brady Perkins, Esq.
Rheem Water Heaters
2600 Gunter Park Drive East
Montgomery, AL 36109-1413

Dear Ms. Perkins:

    This firm represents Ms. Candace Corley in the matter of the harassment she suffered at the hands of Mr. Hendricks. It is my understanding that you are in possession of the sexual gratification aide that Mr. Hendricks attempted to have my client use in his presence. We believe this will be a crucial piece of evidence in the coming proceedings. Accordingly, this letter is written to request that you do not dispose of, or alter, the vibrator that was given to my client by Mr. Hendricks. If you should have any questions, please do not hesitate to contact me.

Sincerely,

Mark M. Gibson



EXHIBIT
E



FRED D. GRAY, JR.          LISTER H. REDDOCH          JACK B. JACKSON
JOHN F. ANDREWS           JAMES M. WALTER, JR.        LEE M. RUSSELL, JR.
WILLIAM D. COLEMAN        JAMES H. McLEMORE           CHAD W. BRYAN
WILLIAM K. MARTIN         CONSTANCE SMITH BARKER      MICHAEL P. DALTON
GEORGE L. BECK, JR.       W. HOLT SPEIR III           CATY HOUSTON RICHARDSON
BRUCE J. DOWNEY III       CHRISTOPHER W. WELLER       ARDEN REED PATHAK
HENRY C. BARNETT, JR.     DEBRA DEAMES SPAIN          TERRIE SCOTT BIGGS
K. PALMER SMITH           C. CLAY TORBERT III
ROBERT T. MEADOWS III     R. BROOKE LAWSON III        OF COUNSEL:
HENRY H. HUTCHINSON       J. SCOTT PIERCE             JAMES M. SCOTT
SHAPARD D. ASHLEY         ROBERT D. RIVES             THOMAS S. LAWSON, JR.
D. KYLE JOHNSON           RICHARD H. ALLEN
ROBERT F. NORTHCUTT       M. COURTNEY WILLIAMS

# CAPELL & HOWARD P.C.
## ATTORNEYS AT LAW

June 14, 2006

Mark M. Gibson, Esq.
Almon & Gibson, LLC
6 Office Park Circle
Ste. 214
Birmingham, AL  35223

RE:   *Your client, Candace Corley*

Dear Mr. Gibson:

We represent Rheem Manufacturing, Inc.  We have been given your letter of June 8, 2006 to Alora Perkins and asked to respond.  It is true that Ms. Corley gave what appears to be a sex toy to a member of the Rheem Human Relations Department on Friday, May 19th.  We have received that item from Rheem for safekeeping.

You may contact me if you have further questions about it, though I will be out of the country until June 22nd.  If you need to contact us prior to then, please contact Henry Barnett, also of this firm.

Very truly yours,

Bruce J. Downey, III

BJD/pm
Direct Dial (334) 241-8060
Direct Fax (334) 241-8260
Email bjd@chlaw.com

EXHIBIT
F

1070386

MONTGOMERY  •  OPELIKA / AUBURN

150 SOUTH PERRY STREET (36104), POST OFFICE BOX 2069, MONTGOMERY, ALABAMA 36102-2069
334 241 8000 tel    334 323 8888 fax    www.capellhoward.com